## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF AND COUNTERCLAIM DEFENDANT PACIFIC EMPLOYERS INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT AND COUNTERCLAIMANT SERVCO PACIFIC, INC.

I.     **SUMMARY OF ARGUMENT.**

It is well established that an insurer's duty to defend extends only to "**suits**" filed in a court of law. Similarly and logically, it is established that an insurer's duty to indemnify extends only to money ordered by a court pursuant to a suit[1]. These conclusions are compelled not only by the "plain meaning rule," embraced by the courts in Hawaii, but also by precedent. One case that upholds the suit requirement was recently decided by this Court. In *CIM Ins. Corp. v. Masamitsu*, 74 F.Supp.2d 975, 986 (D. Haw. 1999), this Court, following the California Supreme Court's squarely on-point decision in *Foster-Gardner Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 959 P.2d 265 (1998), held that the "term" suit in an insurance policy is unambiguous and requires the filing of a suit before an insurer can be called upon to respond. Similarly, the same court that decided *Foster-Gardner* held in *Certain Underwriters at Lloyd's London v. Superior Court (Powerine)*, 24 Cal.4th 945, 16 P.3d 94 (2001) that an insurer is not obligated to indemnify the policyholder in the absence of a judgment against the policyholder, *i.e.*, money ordered by a court. These fundamental principles of insurance law prove fatal to the contention of the policyholder in this case, defendant Servco Pacific, Inc. ("Servco"), that its insurer, plaintiff Pacific Employers Insurance Company ("PEIC"), owes it a duty to defend and indemnify in connection with an alleged claim by the Hawaii Department of Health ("DOH") that Servco clean up contaminated property that it leased.

---

[1] Unless, of course, the insurer consents to a settlement between the policyholder and the claimant.

Similarly, the plain meaning rule, which requires that insurance policy provisions be accorded "plain, ordinary and accepted use in common speech," dictates that the pollution exclusion in the PEIC insurance policy at issue bar coverage for property damage claims arising out of the contamination of Servco's property.  The only exception is if Servco can satisfy its burden of proving that the contamination at issue was caused by a "sudden and accidental," *i.e.*, abrupt and unintentional, discharge.  The contamination at issue here was caused by the routine operation of a former wood preserving facility at the site at issue.  Servco has failed to produce any evidence that the contamination was caused by a "sudden *and* accidental" discharge.  This provides a separate and independent ground for granting this motion.

Accordingly, PEIC requests that this Court enter summary judgment in favor of PEIC and against Servco with respect to the following issues:

(1)  PEIC does not have a duty to defend Servco in connection with the DOH matter because the DOH matter does not constitute a suit under the PEIC policy at issue;

(2)  PEIC does not have a duty to indemnify Servco in connection with the DOH matter because there is no judgment or money ordered by court that PEIC is "legally obligated to pay as damages" under the PEIC policy at issue; and

(3)  There is no duty to indemnify Servco under the PEIC policy at issue in connection with either the DOH matter or the second underlying claim involving a counterclaim against Servco because Servco cannot show that that the contamination was caused by a "sudden and accidental" discharge, as opposed to routine operations at the site.

/ / /

/ / /

3

## II.    INTRODUCTION.

This matter arises out of an insurance coverage dispute between Servco and its excess insurer, PEIC.  PEIC filed this action to obtain a declaration that it does not have a duty to defend or indemnify Servco under its excess policies with respect to two environmental matters asserted against Servco.  PEIC's complaint also seeks a declaration against Servco's primary insurer, Island Insurance Company ("Island"), that to the extent that PEIC owes any duties to Servco, PEIC is entitled to indemnity and contribution from Island.  The two underlying matters for which Servco seeks coverage arise out of the contamination of real property leased by Servco, located at 2819 and 2841 Pukoloa Street, Honolulu, Hawaii ("Site").

The first underlying matter involves the DOH's notification to Servco on or about January 8, 1997 that Servco address the contamination at the Site ("DOH Matter").  At no time, however, has the DOH or any other government agency filed a suit against Servco in connection with the contamination at the Site.  Nor has the DOH or any other government agency obtained a judgment against Servco in connection with the contamination of the Site.

The second underlying matter involves a counterclaim filed against Servco by the fee simple owner of the Site, Trustees Under the Will and of the Estate of Samuel M. Damon ("Damon Estate"), in response to a suit initiated by Servco on April 2, 1998 relating to the contamination of the Site.

The defense provision of the PEIC policy at issue states that if the limits of liability of the underlying insurance are exhausted because of property damage during the policy period, PEIC "will have the right and duty to defend any *suit* against the Insured . . ." [Emphasis added.]  The indemnity provision of the PEIC at issue states that PEIC will indemnify the Servco for ultimate net loss (after exhaustion of the

underlying insurance and retained limits) which the insured "shall become **legally obligated to pay as damages** because of . . . property damage . . ." [Emphasis added.]   In addition, the pollution exclusion of the PEIC policy at issue expressly bars coverage for property damage arising out of the discharge of contaminants into the soil or groundwater unless such discharge was "**sudden and accidental**."

## III.    STATEMENT OF MATERIAL UNDISPUTED FACTS.

### A.    *Servco's Acquisition Of The Leasehold At The Site And Discovery Of Contamination.*

On or about September 14, 1984, Servco entered into an agreement under which it agreed to purchase certain assets from City Mill Company Limited ("City Mill"), including City Mill's leasehold interest in the Site. [Separate and Concise Statement of Facts ("Facts") No. 1, filed concurrently herewith]  On or about March 1, 1985, City Mill assigned its leasehold interest in the Site to Servco. [Facts, No. 2]  Servco contends that in April 1996, Servco hired Clayton Environmental Consultants ("Clayton") to conduct a Phase II subsurface investigation of the Site.  Servco claims that as a result of Clayton's investigation, it learned that the Site was contaminated.  [Facts, No. 3] Servco claims that the contamination at issue was caused by the operation of a wood preserving business at the Site.  [Facts, No. 4]  However, to date, despite being involved in at least two underlying matters regarding the contamination at the Site, Servco has failed to provide any evidence that the contamination was caused by a sudden and accidental discharge.  [Facts, No. 16]

/ / /

/ / /

/ / /

### B.    The DOH Matter.

Servco notified the DOH of its findings regarding the contamination of the Site. On January 8, 1997, the DOH notified Servco that the Site had been identified as "medium priority" through its site screening procedures, and requested further investigation and/or monitoring according to DOH's technical manual for implementation of the Hawaii State Contingency Plan.  [Facts, No. 5]  At no time has the DOH or any other government agency filed a suit against Servco in connection with the contamination of the Site.  [Facts, No. 6]  In July 1997, Servco tendered the DOH Matter to PEIC for defense and indemnity.  Servco claims that in response to the DOH's requirements, Servco undertook measures to remediate the Site.  Servco claims that by December 1, 1998, it had incurred over $500,000 in damages, remediation costs and expenses related to the contamination of the Site, and that to date it has incurred more than $900,000 in such expenses.  [Facts, No. 7]

### C.    The Suit Against Servco.

On April 2, 1998, Servco initiated a suit against various potentially responsible parties, including Damon Estate.  [Facts, No. 8]  On September 9, 1998, Damon Estate filed a counterclaim against Servco seeking indemnification for any liability in connection with the Site.  [Facts, No. 9]  Servco tendered the Damon Estate counterclaim to PEIC for defense and indemnity.

### D.    The PEIC Policy At Issue.

Servco seeks coverage for the two underlying matters under the following PEIC policy:  PEIC Excess Blanket Catastrophe Liability Policy No. XMO 016553 ("PEIC Policy"), effective November 1, 1984 to November 1, 1985.  [Facts, No. 10]  The Policy

is excess of Island Insurance Company policy no. TSM 10011004, also effective

November 1, 1984 to November 1, 1985.  [Facts, No. 11]  This underlying Island policy

contains limits of $500,000, which amount must be exhausted before Servco can reach

the PEIC Policy.

The PEIC Policy's duty to defend provision provides in pertinent part:

> If limits of liability of the underlying insurance are exhausted because of . . . property damage . . . during the period of this policy, PEIC will have the right and duty to defend any **suit** against the Insured seeking damages on account of such . . . property damage . . . even if any of the allegations of the **suit** are groundless, false or fraudulent, and may make such investigation and settlement of any **claim or suit** as it deems expedient . . . [Emphasis added.]  [Facts, No. 12]

The PEIC Policy's indemnity provision provides in pertinent part:

> PEIC will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become **legally obligated to pay as damages because of . . . property damage** . . . to which this insurance applies, caused by an occurrence . . .[Emphasis added.]  [Facts, No. 13]

The PEIC Policy's "No Action" clause states in pertinent part:

> No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the insured's obligation to pay shall    have    been    finally determined either by judgment against the Insured after **actual trial or by written agreement of the Insured, the claimant and PEIC**. . . . [Emphasis added.]  [Facts, No. 14]

The PEIC Policy contains a "pollution exclusion," which states as follows:

> This policy does not apply:  . . . to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.  [Facts, No. 15]

## IV.    SUMMARY JUDGMENT IS APPROPRIATE WHERE THE ISSUE IS A PURELY LEGAL ISSUE.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rules of Civ. Proc., Rule 56(c). When the historical facts controlling the application of a rule of law are undisputed, the application raises a question of law for the court. A party's "motion for summary judgment is appropriate because defendant raises questions of law, the resolution of which does not involve disputed 'material' facts." *Delbon Radiology v. Turlock Diagnostic Ctr.,* 839 F.Supp. 1388, 1391 (E.D. Cal. 1993). The Ninth Circuit Court of Appeal has sanctioned the use of summary judgment to adjudicate the application of insurance policy language to undisputed facts. *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989).

Similarly, in the instant case, the resolution of the issues for summary judgment does not involve disputed material facts, but rather an application of unambiguous policy language to undisputed facts. Because, as a matter of law, the DOH Matter does not constitute a "suit" or can result in a judgment in a court of law, the Court should grant this motion with respect to those issues.

In addition, according to the United States Supreme Court's decision in *Celotex, supra*, summary judgment should be granted where the nonmoving party with the

burden of proof on an issue, the "sudden and accidental pollution exclusion here, fails to

set forth "specific" facts to satisfy its burden.


V.    **IN HAWAII, INSURANCE CONTRACTS ARE INTERPRTED ACCORDING TO THEIR "PLAIN, ORDINARY" MEANING.**

An insurer's duties are determined, in the first instance, from the language of the

insurance contract.  *See generally, Hawaiian Ins. and Guar. Co. v. Brooks*, 67 Haw.

285, 686 P.2d 23 (1984).  Hawaii law provides that the terms in a contract should be

accorded their "plain, ordinary and accepted use in common speech" unless the

contract itself reflects a different meaning.  *See, e.g., Pancakes of Hawaii, Inc. v.

Pomare Properties Corp.*, 85 Haw. 300, 305, 944 P.2d 97, 101 (Ct. App. 1997) (quoting

*Amfac, Inc. v. Waikiki Beachcomber Inc. Co.*, 74 Haw. 85, 108-09, 839 P.2d 10, 24

(1992)); *Dairy Road Partners v. Island Ins. Co.*, 92 Haw. 398, 411, 992 P.2d 93, 106

(2000) (applying the doctrine to an insurance contract).

Further, a court should not seek to create an ambiguity where none exists.

*Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii*, 76 Haw. 277, 298, 875 P.2d 894, 915

(1994); *Crawford v. Ranger Ins. Co.*, 653 F.2d 1248, 1250 (9th Cir. 1981) (applying

Hawaii law and holding that "[m]ere complexity in an insurance policy does not make it

ambiguous.")  Where the policy's terms are clear and unambiguous, the court must

enforce the policy according to such terms.  *See, e.g., Sentinel, supra*, 76 Haw. at 298,

875 P.2d at 915; *Chicago Ins. Co. v. Griffin*, 817 F.Supp. 861, 864 (D. Haw. 1993)

("Interpretation of an insurance policy begins with an examination of the policy language

[citation omitted].  The court must interpret the terms of the insurance policy according

to the plain meaning of its words and may not assign a different meaning unless clearly

intended by the parties.")


Therefore, this Court should look first to the terms of the insurance contract and ascribe the plain, ordinary meaning to those terms in order to determine PEIC's duties.

## VI.    THE POLICY AT ISSUE OBLIGATES PEIC TO DEFEND ONLY "SUITS".

This Court has previously held under Hawaii law that the term "suit" in a liability insurance policy similar to the one at issue in this case is unambiguous and does not obligate an insurer to defend a policyholder named in an administrative agency proceeding:

> Moreover, this plain language interpretation is supported by persuasive case law from other jurisdictions. *See Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 77 Cal.Rptr.2d 107, 959 P.2d 265, 285-286 (1998) (establishing bright-line rule, reasoning that "[p]rior to the filing of the complaint, there is nothing for the insured to tender defense of, and hence no duty to defend arises"); *City of Edgerton v. General Cas. Co. of Wisconsin* 184 Wis.2d 750, 517 N.W.2d 463, 477 (1994) ("the word 'suit' is easily understood and unambiguous to a reasonable policyholder. . . . Either there is a suit or there is not. When there is no suit, there is no duty to defend.").

*CIM Ins. Corp. v. Masamitsu*, 74 F.Supp.2d 975, 986 (D. Haw. 1999). In *CIM Ins. Corp.*, this Court held the policy language to be "plain and unambiguous," requiring a duty to defend "suits," but ***not*** threatened suits. *Id.* at 986. It is significant that the *CIM* court contrasted this particular policy language from other policy language analyzed by the Hawaii Supreme Court in *Finley v. Home Insurance Co.*, 90 Haw. 25, 27 n. 3, 975 P.2d 1145, 1147 (1998). In *Finley*, the policy language triggering the insurer's defense obligation stated as follows: "We . . . have the right and duty to defend at our expense ***any claim, proceeding or suit*** against you." (Emphasis added.) There, the insurer's duty to defend as set forth in the policy was more expansive, because the obligation was not limited to the defense of just "suits," but, rather, included "any claim, proceeding

or suit" against the insured.  The inescapable rationale of the distinctions drawn with

respect to the differing policy language is that to impose an obligation upon an insurer to

defend both claims and suits, even though the insurer only contractually undertook to

defend suits, contravenes the plain language of the policies.  To do so runs afoul of

Hawaii law, because an insurer's obligation would then rest not upon the plain and

unambiguous language of the policy, but rather upon some extraneous consideration

that would result in expanding a contractual obligation to include a promise that was

never made.

The *CIM Ins. Corp.* ruling is also consistent with the Hawaii Supreme Court's

ruling that the "duty to defend is limited to situations where the **pleadings** have alleged

claims for relief which fall within the terms for coverage of the insurance contract."

*Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indemnity Co.*, 76 Haw. 166,

169, 872 P.2d 230, 233 (1994) (emphasis added.).  *See also*, *Commerce & Indus. Ins.*

*Co. v. Bank of Hawaii,* 73 Haw. 322, 326, 832 P.2d 733, 735 (1992) (The potential for

coverage is measured by the **pleadings** in the litigation as to which a defense is

sought.)

One of the two precedents cited in *CIM Ins. Corp.* is the California Supreme

Court's decision in *Foster-Gardner Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857,

959 P.2d 265 (1998), which addressed the nearly identical situation presented to the

Court in this action.   There, the policyholder, Foster-Gardner, Inc., was the subject of

an administrative proceeding brought by the California Environmental Protection

Agency, which issued an "Imminent and Substantial Endangerment Order and

Remedial Action Order" to Foster-Gardner pursuant to California's version of the federal

"Superfund" statutes.  18 Cal.4th at 861, 959 P.2d at 267-268.  The policies that had

been issued to Foster-Gardner, as with the policy in this action, contained an obligation to defend an insured only as to a "suit."  *Id.* at 878, 959 P.2d at 279.

The *Foster-Gardner* Court held that the receipt of a potentially responsible party ("PRP") letter does not invoke an insurer's duty to defend because PRP letters are not "suits" under the language of the policies.  Although Foster-Gardner argued that the administrative agency proceeding was sufficiently "coercive" to make the agency's proceedings the **functional equivalent** of a suit (thus triggering the duty to defend), the California Supreme Court rejected that analysis and found that "suit" has a plain meaning from which the court would not deviate.  *Id.* at 881, 959 P.2d at 282. Moreover, such a functional equivalent analysis "would introduce a significant element of uncertainty into an insurer's ascertainment of its duty to defend . . . [and] courts would have to rewrite unambiguous policy language on a case-by-case basis under the guise of interpretation."  18 Cal.4th at 881, 959 P.2d at 281.  The *Foster-Gardner* decision laid down a "bright-line rule":

> The duty to defend arises when an insured tenders defense of the third party lawsuit to the insurer . . . Prior to the filing of a complaint, there is nothing for the insured to tender defense of, and, hence no duty to defend arises.  It follows therefore that site investigation expenses incurred prior to the instigation of a lawsuit against the insured are not defense costs the insurer must incur.  That is because the insurer does not yet have a duty to defend the insured.

*Id.* at 886, 959 P.2d at 285-286.

Moreover, expanding an insurer's obligation to include within the scope of the duty to defend those proceedings that do not constitute "suits," where the same insuring clauses distinguish an insurer's rights with respect to "claims" (investigate or settle them) and "suits" (obligated to defend), would effectively render PEIC's contractual right to dispose of "claims" by negotiation or settlement mere surplusage.  Insurance

contracts must not only be interpreted according to the plain meaning of the terms, but also according to the entirety of the terms and conditions in the policy, in order to give effect to **all** of the provisions therein.  *See, e.g., AIG Hawaii Insurance Co. v. Estate of Caraang*, 74 Haw. 620, 851 P.2d 321 (1993); *State Farm Fire & Casualty Co. v. Gorospe*, 106 F.Supp.2d 1028, 1031 (D. Haw. 2000).

In the instant case before the Court today, the DOH has not sued Servco. Consequently, there is, under the plainest reading of the policy language, no "suit," nothing to tender, nothing that contains allegations which can form the basis for a duty to defend, and consequently, no obligation to defend.  Any other ruling would rewrite unambiguous policy language and provide Servco with an unintended windfall. Furthermore, extending the scope of coverage to include the defense of an administrative proceeding would open a dam of uncertainty in relation to demand letters sent by many governmental agencies such as, to name a few, the Internal Revenue Service, the Immigration and Nationalization Service or the Equal Employment Opportunity Commission.

## VII.  PEIC DOES NOT OWE A DUTY TO INDEMNIFY SERVCO FOR THE DOH MATTER.

The plain language of the PEIC Policy also limits the duty to indemnify to a judgment against the insured after a civil action prosecuted in court.  As set forth above, the PEIC Policy indemnifies Servco only for sums that Servco "shall become legally obligated to pay as damages because of . . . property damage . . ."  "Damages," read in its plain and ordinary sense, has been held to require indemnification only after a judgment for money ordered by a court after a civil action prosecuted in court.  *Certain Underwriters at Lloyd's London v. Superior Court (Powerine)*, 24 Cal.4th 945, 16 P.3d

94 (2001).  Prior to the *Powerine* decision, California Supreme Court decisions found

that until damages were fixed in their amount after adjudication, there was no obligation

to indemnify the policyholder.  *See*, *Aerojet-General Corp. v. Transport Indem. Co.*, 17

Cal.4th 38, 56-59, 948 P.2d 909, 919-921 (1997); *Buss v. Superior Court*, 16 Cal.4th 35,

46, 939 P.2d 766, 773 (1997).  The Court in *Powerine* noted that it is only in a "suit" that

"damages" can be awarded according to the plain meaning of the word "damages."

Since there is no defense obligation for proceedings that are not "suits," there is no

obligation to indemnify the insured as a result of such proceedings; the result is not a

judgment awarding "damages."  *Powerine*, 24 Cal.4th 945, 16 P.3d 94 (2001).[2]

The *Powerine* court based its finding on the plain meaning of the word

"damages" as a limitation on the sums which the insurers agreed to indemnify:

> To be sure, one might speak of a "sum that the insured
> becomes legally obligated to pay" *simpliciter* – omitting "as
> damages" – apart from any order by a court.  For one might
> say that the insured is legally obligated to pay some such
> sum under abstract legal rules alone.  Thus, one might say
> that a driver . . . is legally obligated to pay the toll required by
> such laws . . . apart from any such [court] order.
>
> But one would **not** speak of any sum that the insured
> becomes legally obligated to pay **as damages apart from
> any order by a court**. . . That is because, as a sum that the
> insured becomes legally obligated to pay as "damages'"
> presuppose an institution for their ordering, traditionally a
> court, . . . "Damages" do not constitute a redundancy to a
> "sum that the insured becomes legally obligated to pay," but
> a limitation thereof.

*Powerine* 24 Cal.4th  at 963, 16 P.3d at 105 (emphasis in original).

The term "damages" is a limitation, therefore on the concept of "sums that the

insured becomes legally obligated to pay," since, in many instances, one may incur

---

[2] In the *Powerine* case, the insured had been engaged in an oil refining business for approximately 60 years when the EPA commenced an administrative proceeding under CERCLA to require the insured to clean up the contamination at its refinery site.

legal obligations in the sense of being obligated to comply with laws, without being subjected to court process that reduces that exposure to "damages." *Powerine*, 24 Cal.4th at 963-964. Further, in *Powerine*, the Supreme Court held that "damages exist traditionally inside of court [citations omitted] . . . 'harm' exists traditionally outside of court." *Powerine*, 24 Cal.4th at 962. Thus, expenses mandated by an administrative agency pursuant to an environmental statute are not "sums that the insured becomes legally obligated to pay as damages" and, therefore, are not covered under the policies. 24 Cal.4th at 964, 16 P.3d at 105-106.

While no Hawaii case has directly addressed the precise issue presented here with respect to the duty to indemnify, one Hawaii Supreme Court decision is highly instructive. In *Sentinel Ins. Co., supra*, the insurance policies at issue contained language identical to the language in the PEIC policy. Specifically, the policies in *Sentinel* provided, in relevant part:

> [The insurer] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies . . .

76 Haw. at 287, 875 P.2d at 904. In assessing whether a duty to indemnify existed, the court recognized that:

> A "third party" [*i.e.*, liability] policy, on the other hand, provides coverage for the insured's liability to another . . . wherein the carrier generally assumes a contractual duty to pay **judgments recovered against the insured** arising from the insured's negligence.

76 Haw. at 289, 875 P.2d at 906 (emphasis added) (citing *Garvey v. State Fire & Cas. Co.*, 48 Cal.3d 395, 405-406, 770 P.2d 704, 709-710 (1989)). The *Sentinel* court thus acknowledged that the duty to pay arises when there is a judgment against the insured. 76 Haw. at 291, 875 P.2d at 908.

Similarly, here, the PEIC policy indemnifies Servco only for sums which Servco "becomes legally obligated to pay as damages." The costs and expenses which Servco has demanded PEIC to pay in connection with the DOH Matter, are solely the result of administrative proceedings conducted following receipt of the DOH "PRP letter." No suit was ever filed by the DOH claiming such relief. No such relief was ever ordered to be paid by any court. Thus, Servco cannot be ordered to pay "damages" to the DOH in the absence of a suit. Accordingly, the PEIC policy cannot be called upon by Servco to pay for its environmental obligations pursuant to the DOH letter.

The PEIC Policy's "No Action" clause, set forth in Section III.D., above, also compels the conclusion that there is no duty to indemnify absent a judgment or a settlement agreement entered into with the consent of PEIC. Specifically, the Policy does not permit Servco to settle "claims" without PEIC's consent and obtain coverage simply by submitting the bill to PEIC for reimbursement. Instead, the PEIC Policy requires that Servco's obligation to pay be fixed in a specific way, *i.e.,* by judgment of a court of law or by settlement to which PEIC has agreed, before PEIC can have any obligation to pay. *See, Powerine, supra,* 24 Cal.4th at 962 n.4 (the "No Action" provisions means that the insurer has a duty to fund settlements to which it has agreed, but only a duty to indemnify a "judgment" entered in a court of law.)

Accordingly, under the plain meaning of the PEIC Policy and the weight of persuasive authority, PEIC has no duty to indemnify Servco in connection with the DOH Matter.

/ / /

/ / /

/ / /

/ / /

16

VIII.  **THE POLLUTION EXCLUSION APPLIES BECAUSE SERVCO CANNOT SHOW THAT THE CONTAMINATION WAS CAUSED BY A SUDDEN AND ACCIDENTAL EVENT.**

As set forth in full in Section III.D., above, the pollution exclusion in the PEIC Policy bars coverage for any property damage arising out of contamination unless the discharge of the contamination was "sudden and accidental."

A.   ***"Sudden" In The Pollution Exclusion Means "Abrupt" And "Immediate."***

The phrase "sudden and accidental" in the pollution exclusion has been held to be "unambiguous" and therefore has been interpreted as a lay person would understand it:  "'[A]ccidental' conveys the sense of an unexpected event, while 'sudden' conveys the sense of an unexpected event that is abrupt or immediate in nature."  *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 755, 15 Cal.Rptr.2d 815, 841 (1993). The court in *Shell Oil, supra*, as in the courts in Hawaii, interpreted the policy language "in its ordinary and popular sense."  12 Cal.App.4th at 753, 15 Cal.Rptr.2d at 840. Acknowledging that one aspect of the meaning of "sudden" is "unexpected," the court observed that

> saying that "sudden" means "unexpected," and nothing more, strips the word of a significant facet of its ordinary meaning.  Sudden events derive an "unexpected" quality both from being unforeseen and from having a comparatively quick onset.  We cannot reasonably call "sudden" a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process.  A "discharge, dispersal, release or escape" of pollutants that happens gradually and continuously for years is not "sudden" in the ordinary and popular sense of the word.  [Citations omitted.]  Thus, "sudden" necessarily contains a temporal element in addition to its connotation of the unexpected.

*Shell Oil, supra*, 12 Cal.App.4th at 754, 15 Cal.Rptr.2d at 840-841.

The *Shell Oil* court also reasoned that to hold that "sudden" means "unexpected" only and no more, would run afoul of the rule that "[t]he whole of a contract is to be

17

taken together, so as to give effect to every part. [citation omitted]" *Shell Oil, supra*, 12 Cal.App.4th at 753, 15 Cal.Rptr.2d at 840. Because interpreting "sudden" to mean "unexpected" would produce a redundancy as the term "accidental in the phrase "sudden and accidental" means "unexpected, "sudden" must have a temporal element. *Id. Accord, ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal.4th 1773, 1778, 22 Cal.Rptr.2d 206, 208 (1993) (Sudden conveys a meaning of "immediacy, quickness or abruptness" such as a rupture, an explosion or a spill); *Standun, Inc. v. Fireman's Fund Ins. Co.*, 62 Cal.App.4th 882, 73 Cal.Rptr.2d 116 (1998) (same).

Applying the identical exclusion to a pollution coverage claim, the Ninth Circuit in *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432 (9th Cir. 1993) (applying California law) held that there was no coverage for gradual pollution. Moreover, the Ninth Circuit rejected the policyholder's effort to "break down its long-term waste practices into temporal components in order to find coverage where the evidence unequivocally demonstrates that the pollution was gradual." *Id.* at 1438.

It is not just under California law where it is a foregone conclusion that the term "sudden" requires an abrupt and immediate event before a policyholder can obtain coverage for a pollution claim. The overwhelming majority of all the jurisdictions similarly require an abrupt and immediate discharge.[3]

---

[3] In the interest of brevity, the following is only a **partial** list of cases that have held that gradual pollution is not covered by the sudden and accidental pollution exclusion. *Guaranty National Ins. Co. v. Vic Manufacturing Co.,* 143 F.3d 192, 195 (5th Cir. 1998); *Northville Indus. Corp. v. National Union Fire Ins. Co.*, 89 N.Y.2d 621, 634-35, 679 N.E. 2d 1044, 1049 (1997); *Sharon Steel Corp. v. Aetna Casualty & Sur. Co.*, 931 P.2d 127, 135-35 (Utah 1997); *Macklanburg-Duncan Co. v. Aetna Casualty & Sur. Co.*, 71 F.3d 1526, 1535-37 (10th Cir. 1995); *Cincinnati Ins. Co. v. Flanders Electric Motor Serv., Inc.*, 40 F.3d 146, 153-54 (7th Cir. 1994); *Bituminous Casualty Corp. v. Tonka Corp.*, 9 F.3d 51, 53-54 (8th Cir. 1993); *cert. denied*, 511 U.S. 1083 (1994); *Harrow Prods., Inc. v. Liberty Mutual Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir. 1995); *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1426-29 (2d Cir. 1991); *Northern Ins. Co. v.*

**B.     The Fact That Servco Did Not Cause Or Intend The Contamination Is Irrelevant For The Purposes Of The Pollution Exclusion.**

The "sudden and accidental" exception to the pollution exclusion in the PEIC Policy is plain and unambiguous in its application:  the discharge or release of contaminants must be sudden and accidental.  Thus, it is of no consequence that Servco did not cause or intend the contamination.

> It is irrelevant for the purpose of the pollution exclusion that the insured complied with all applicable regulations and licensing requirements at the time of the disposal of the hazardous waste. . . . It is also irrelevant that the insured did not intend to contaminate the environment.

*Standun, supra*, 62 Cal.App.4th at 893, 73 Cal.Rptr.2d at 122.

Similarly, in *East Quincy Services Dist. v. Continental Ins. Co.*, 864 F.Supp. 976, 980 (E.D. Cal. 1994), the court, rejecting the "active" versus "passive" polluter distinction, held that the "sudden and accidental" exclusion bars coverage for pollution by third persons for which the insured is liable, *even if the insured had no knowledge or control over the polluting activities*.

**C.     Servco Bears The Burden Of Proving (1) That The Contamination Was Caused By A Sudden And Accidental Discharge And (2) The Extent To Which Any Sudden And Accidental Discharge Caused The Contamination For Which Coverage Is Sought.**

**1.     Servco has the burden of proving that the contamination was caused by a sudden and  accidental discharge.**

While the insurer bears the initial burden of proving that the pollution exclusion applies, the burden then shifts to the policyholder to prove that the discharge of the

---

*Aardvark Associates, Inc.*, 942 F.2d 189, 195 (3d Cir. 1991); *Great Lakes Container Corp. v. National Union Fire Ins. Co.*, 727 F.2d 30 (1st Cir. 1984); *International Minerals & Chem. Corp. v. Liberty Mutual Insurance Company*, 168 Ill.App.2d 361, 522 N.E. 2d 758, *appeal denied*, 122 Ill.2d 576, 530 N.E. 2d 246 (1988); *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 497, 476



contamination was "sudden and accidental." *Aeroquip Corp v. Aetna Cas. and Sur. Co., Inc.*, 26 F.3d 893 (9th Cir. 1994) (applying California law); *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1194, 77 Cal.Rptr.2d 537, 543 (1998).   The material facts in *Aeroquip*, *supra*, are substantially similar to the facts of the instant case.  In *Aeroquip*, the policyholder, Aeroquip, leased certain real property to Brasher Brothers, Inc. in 1979.  Soon thereafter, Brasher Brothers installed an underground storage tank.  In 1986, Aeroquip hired an environmental consulting firm to remove the tank.  The consultant discovered that approximately 7,500 gallons of diesel fuel had leaked into the soil.  The cause and time of the leak was undetermined.  After spending $1 million to clean up the contamination, Aeroquip sought coverage under a comprehensive general liability policy issued by Aetna.  Aetna obtained a summary judgment against Aeroquip on the basis that Aeroquip had failed to prove that the contamination was caused by a sudden and accidental discharge.  Arguing that the insurer had the burden of proving that the contamination was sudden and accidental, Aeroquip appealed to the Ninth Circuit.

The Ninth Circuit, reviewing the decisions in other jurisdictions, affirmed the grant of summary judgment to Aetna and held that the policyholder indeed had the burden.

> This allocation aligns the burden with the benefit. . . . The "sudden and accidental" exception creates coverage where it would otherwise not exist and thus the insured's burden of proving coverage extends to proof of this exception.  [¶]  Moreover, if the burden were on the insurer, the property owner would have an incentive to avoid finding out whether the pollutants are being gradually discharged, because preservation of ignorance would increase the likelihood of insurance coverage.

*Aeroquip, supra*, 26 F.3d at 895.  The Ninth Circuit concluded that "*[i]n the absence of*

---

N.W. 2d 392 (1991); *Lumbermens Mutual Casualty Co. v. Belleville Industries*, 407 Mass. 675, 555 N.E. 2d 568 (1990).

*any evidence that the discharge was sudden, the district court properly entered summary judgment for the insurer.*" *Id.* (emphasis added.)

In *Aydin*, the California Supreme Court examined how other jurisdictions have dealt with this issue. It then concluded that the "overwhelming weight of authority now places the burden of proving the 'sudden and accidental' exception on the insured." *Aydin, supra*, 18 Cal.4th at 1190, 77 Cal.Rptr.2d at 540. "Likewise, *all* of the currently valid federal decisions predicting how other state high courts would rule have placed the burden on the insured. [citations omitted]." 18 Cal.4th at 1190, 77 Cal.Rptr.2d at 541. The Court reasoned as follows:

> Specifically, we agree that the "sudden and accidental" exception is properly construed as a coverage provision when allocating the burden of proof. In making this determination, we are guided by the familiar principle that the provisions of an insurance policy, like the provisions of any other contract, must be construed in the context of the policy as a whole.

*Aydin, supra*, 18 Cal.4th at 1191, 77 Cal.Rptr.2d at 541.

As noted in both *Aeroquip* and *Aydin*, California law is not alone in this logical application of the exception to the pollution exclusion. In the interest of brevity and avoidance of multiple pages of citations, PEIC respectfully refers this court to citations in *Aeroquip* and *Aydin* of cases in other jurisdictions supporting PEIC's position.

## 2. *Servco also has burden of proving the extent to which any alleged sudden and accidental discharge caused the contamination for which it seeks coverage.*

Even if Servco were able to prove that some of the contamination was caused by a sudden and accidental discharge, it must show which portion of the contamination was caused by such alleged sudden and accidental discharge. *Golden Eagle Refinery v. Associated International Insurance Company*, 85 Cal.App.4th 1300, 1316, 102

Cal.Rptr.2d 834, 845 (2001). In other words, it is not sufficient for Servco to merely point out to one or more particular alleged sudden and accidental events and seek coverage for the entire contamination. Servco must also show a link between the alleged sudden and accidental event and the property damage for which it seeks coverage.

In *Golden Eagle*, the policyholder was a refinery which was ordered by a government agency to clean up contamination resulting from numerous discharges of crude oil waste products over a period of years. The policy under which it sought coverage covered liability for only sudden and accidental discharges. Because the policyholder could not prove what part of the contamination resulted from sudden and accidental discharges, the court held that none of the loss was covered. The court reasoned:

> [Policyholder's] . . . argument it need only prove that a sudden and accidental event caused an appreciable amount of contamination is wrong because it is essentially a tort approach. [Policyholder's] . . . claim is for indemnity and sounds in contract. To prove a claim for breach of contract, more is required than evidence that a covered cause was a "substantial contributing cause" of its damage. "Substantial cause" may be sufficient to make a prima facie case in a tort action in order to support a joint and several judgment, but in the context of a coverage dispute relating only to the duty to indemnify, the tort threshold is not sufficient.

*Golden Eagle, supra*, 85 Cal.App.4th at 1316, 102 Cal.Rptr.2d at 834. The *Golden Eagle* court relied on the fundamental concept of "a causal connection" between the damages sought and the insurer's breach of the policy contract to support its holding. *Id.*

Similarly, in Hawaii, before a party can recover damages as a result of an alleged breach of contract, it must show a causal link between the breach and the damages:

> The general rule is that in an action for damages for breach of contract only such damages can be recovered as are the natural and

> proximate consequences of its breach; that the damages recoverable
> must be incidental to the contract and be caused by its breach . . .

*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 128, 839 P.2d 10, 32-33

(Haw. 1992).

In the instant case, before it can recover indemnity payments under the PEIC

Policy, Servco must not only prove that the contamination at issue was sudden and

accidental, it must also prove the extent to which the alleged sudden and accidental

discharge caused the contamination.

**D.    *The United States Supreme Court Mandates Grant Of Summary Judgment Where The Opposing Party With The Burden Of Proof Fails To Make A Showing Sufficient To Establish The Existence Of An Element Essential To Its Case.***

Servco cannot escape the fatal blow of this motion by simply resting upon its

allegations or denials of PEIC's pleadings.  Instead, as clarified by the United States

Supreme Court, Rule 56 "requires the nonmoving party to go beyond the pleadings and

by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

on file,' designate '***specific*** facts showing that there is a genuine issue for trial.'"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986) (emphasis

added.)   On the other hand, where the burden of proof on an issue rests on the

nonmoving party, there is ***no*** "express or implied requirement in Rule 56 that the moving

party support its motion with affidavits or other similar materials negating the opponent's

claim." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553 (1986) (emphasis original).

In the instant case, the undisputed facts indicate the property damage for which

Servco seeks coverage arises out of contamination.  However, despite learning about

the contamination, by its own admission, in 1996, despite years of litigating the

underlying action with the former owners, lessors and operators of the Site and despite

its purported undertaking of investigation and remediation of the Site, Servco has not provided a scintilla of evidence to support that the contamination was caused by a sudden and accidental discharge.   Inasmuch as the burden of providing this evidence is with Servco, under Rule 56 and the standards articulated by the Supreme Court in *Celotex*, this Court should grant this motion.

## IX.    CONCLUSION.

In light of the foregoing, PEIC respectfully requests that this Court follow its own prior decision in *CIM insurance Co.* and find that under the plain meaning of the PEIC Policy, PEIC does not have a duty to defend or indemnify Servco in connection with the DOH Matter.  Further, PEIC respectfully requests that this Court find under the plain meaning of the pollution exclusion that PEIC does not have a duty to indemnify Servco in connection with any property damage arising out of the contamination of the Site, because Servco cannot show that the contamination was caused by a sudden and accidental discharge.

Dated: _____10/31_____, 2002    BERMAN & AIWASIAN


By_____
     Ray Tamaddon
Attorneys for Plaintiff and Counterclaim
Defendant PACIFIC EMPLOYERS
INSURANCE COMPANY